IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CALVIN MCCLENDON,

                Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 2:23-cv-00709

LIEUTENANT TIMOTHY TIBBS, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Jason Hutson, Steve Caudill, and William K. Marshall's (collectively, "Defendants") Motion to Dismiss the plaintiff's Complaint. (ECF No. 10.) For the reasons set forth below, the motion is **GRANTED**.

         *I.*      **BACKGROUND**

This action arises out of an alleged excessive use of force against Plaintiff Calvin McClendon ("Plaintiff") at North Central Regional Jail and Correctional Facility ("NCRJ") by Defendant Lieutenant Timothy Tibbs ("Tibbs"), a correctional officer. (ECF No. 1 at 1.) According to the Complaint, Plaintiff was a pretrial detainee incarcerated at NCRJ on July 26, 2023. (*Id.* at 1, 3.) On that date, Plaintiff and his co-defendant, Denzel Travis, were being prepared to be transported to court for a hearing. (*Id.* at 3–4, ¶¶ 12–17.) While their legs were shackled, and their hands were cuffed at their sides, Tibbs allegedly came up behind Plaintiff, grabbed his head, and slammed Plaintiff's and Mr. Travis' heads together before slamming them against a wall and kicking their legs back towards him and away from the wall. (*Id.* at 3–4, ¶¶ 14–19.) The

1

Complaint states that Tibbs was not provoked before doing this and that Plaintiff and Mr. Travis were compliant. (*Id.* at 4, ¶¶ 21–22.)

After Plaintiff returned to NRCJ from court, he was locked securely in a temporary holding cell when Tibbs, unprovoked and with no warning, approached Plaintiff and pepper-sprayed him multiple times in the face. (*Id.* at 5, ¶ 32.) After spraying Plaintiff, Tibbs placed him in a segregation unit where he had to sleep on the floor, and was not given access to a phone, tablet, nor cleaning supplies. (*Id.* at 6–7, ¶¶ 39–46.)

Defendants were not directly involved in the actions that took place between Tibbs and Plaintiff. Rather, Defendant Marshall is the Commissioner of the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), Defendant Caudill is the Director of Security Services at WVDCR, and Defendant Hutson is the Superintendent of NCRJ. (*Id.* at 2).

The Complaint asserts four causes of action. Counts One and Two are excessive force claims brought under the Fourteenth Amendment, asserted against all the defendants. (ECF No. 1 at 11–16.) Counts Three and Four are asserted only against Tibbs. (ECF No. 1 at 16–17.)

Defendants filed the pending motion to dismiss on December 8, 2023. (ECF No. 10.) Plaintiff filed his response in opposition on December 21, 2023, (ECF No. 13), and Defendants filed their reply on December 28, 2023. (ECF No. 14.) As such, this motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

At all relevant times herein, Plaintiff was a pretrial detainee. Thus, his claims are evaluated under the Fourteenth Amendment, rather than the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983). Unlike the Eighth Amendment, which requires courts to evaluate claims using a subjective standard, under the Fourteenth Amendment, "pretrial detainees can state a claim . . . based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm." *Short v. Hartman*, 87 F.4th 593, 604–11 (4th Cir. 2023) ("[I]t is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively

3

unreasonable.'"). Indeed, "[t]he Fourteenth Amendment Due Process Clause protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive government purpose' or that is 'excessive in relation to that purpose.'" *Id.* at 608–09 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (citations omitted)). "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that is should be known.'" *Id.* at 611 (citations omitted). In any event, "[t]he [Fourteenth Amendment] due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Pepper-spraying and slamming against a wall a pretrial detainee who is compliant and poses no physical threat violates the Eighth Amendment; therefore, it also violates the Fourteenth Amendment. *See Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021).

Plaintiff brings his Fourteenth Amendment claims under 42 U.S.C. § 1983. That civil rights statute "imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotation marks omitted). Plaintiff aims to hold Defendants liable as a result of what they should have known in their supervisory capacity. The doctrine of *respondeat superior*, or vicarious liability, is not applicable to § 1983 claims. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (recognizing the "firmly established . . . principle that supervisory officials may" not be held vicariously liable under § 1983 "for the constitutional injuries inflicted by their subordinates."). Typically, prison officials may only be held liable for constitutional injuries that they cause. *Iqbal*, 556 U.S. at 677.

4

However, while vicarious liability is not applicable to § 1983 claims, supervisory liability is. Claims giving rise to supervisory liability arises when prison supervisors may know or have reason to believe that their subordinates are "act[ing] outside the law" and violating individual's constitutional rights. *Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020) (quoting *Randall v. Prince George's County, Maryland*, 302 F.3d 188, 203 (4th Cir. 2002)). When that occurs, the supervisor must "take steps to prevent such activity," and if he does not, then he too "bears some culpability for [the] illegal conduct [and] may be held liable." *Id.* (internal quotation marks omitted).

Plaintiffs "assume[] a heavy burden of proof in supervisor liability cases." *Slakan*, 737 F.2d at 373. In the Fourth Circuit, plaintiffs seeking to impose supervisory liability must prove:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw*, 13 F.3d at 799). "[E]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799). Therefore, at the very least, Plaintiff must show that the conduct complained of "has been used on several different occasions." *Id.*

In this case, Plaintiff falls short of establishing the first element. Plaintiff's claims against Defendants are wholly conclusory in nature and comprised of legal conclusions, which the Court need not accept as true. *See Twombly*, 550 U.S. at 555. *See, e.g.,* (ECF No. 1 at ¶¶ 47 ("[T]here

is a pattern and practice of the indiscriminate use of excessive force by . . . Defendant Tibbs."), 49, 54, 58 ("[Defendants are] aware, or should be aware, of the regular pattern and practice of uses of excessive force by . . . Defendant Tibbs."), 52, 56, 60, ("In light of the large number of uses of force by Defendant Tibbs, [Defendants] knew, or should have known, of Defendant Tibbs's repeated and unconstitutional uses of excessive force against individuals incarcerated at NCRJ.").)

The Complaint does contain the factual allegation that Tibbs "has been involved in numerous uses of excessive force against incarcerated individuals at NCRJ over the past 18 months." (ECF No. 1 at 7, ¶ 48.) Without providing anything more, the Complaint makes the leap to claiming that Defendants are "aware, or should be aware, of the regular pattern and practice of uses of excessive force by correctional officers at NCRJ, including Defendant Tibbs." (*Id.* at 7–9, ¶¶ 49, 54, 58.) This is not enough to make out a claim of the harm alleged. For instance, Plaintiff has not alleged that the instances of "excessive force" at NRCJ prior to July 26, 2023, were of the same kind alleged in this case—unwarned and unjustified pepper-spraying and slamming against a wall. Thus, Plaintiff has not established a "widespread practice of the particular unconstitutional conduct" which he claims he experienced. *See McNeemer v. Tibbs, et al.*, No. 2:23-cv-00493, 2024 WL 2834483, at * (S.D.W. Va. June 4, 2024) (granting defendant's motion to dismiss because the complaint was entirely conclusory); *Shield v. Tibbs*, No. 2:23-cv-00491, 2024 WL 1804388, at *3 (S.D. W. Va. Apr. 25, 2024) (granting defendant's motion to dismiss when the plaintiff failed to allege facts sufficient to show a widespread practice of conduct "'that posed a pervasive and unreasonable risk of constitutional injury' to inmates"); *Mackey v. Tibbs*, No. 2:24-cv-00012, 2024 WL 2834484, at *3 (S.D. W. Va. June 4, 2024); *McNeemer v. Tibbs*, No. 2:23-cv-00493, 2024 WL 2834483, at *3 (S.D. W. Va. June 4, 2024).

Plaintiff asks this Court to take judicial notice of the other cases pending against Tibbs when the incident in this case occurred. The Court may properly take judicial notice of matters of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, the Court may not take judicial notice of facts adjudicated via litigation, nor "unadjudicated allegations that were never proven true." *Kokinda v. Foster*, No. 3:21-cv-00154, 2024 WL 715962, at *2–3 (N.D. W. Va. Feb. 21, 2024) (citing *United States v. Zayyad*, 741 F.3d 452, 464 (4th Cir. 2014)). Here, all of the cases Plaintiff cites were still pending at the time the alleged incident in this case occurred. (ECF No. 13 at 5 n. 2.) *See E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) (citing *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 Fed.Appx. 820, 825–26 (4th Cir. 2010) (internal citations omitted) (finding error where the district court "'assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, [and] took judicial notice of the truth of disputed factual matters'")).

Regardless of whether the Court may take judicial notice of the pending cases, the Complaint's factual allegations still "'must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Hare v. Simpson*, 621 Fed.Appx. 748, 751 (4th Cir. 2015) (quoting *Philips*, 572 F.3d at 180). Not only has Plaintiff failed to allege the proper facts in the Complaint, but additionally, the cases Plaintiff asks the Court to take judicial notice of are not contained in the Complaint. Instead, Plaintiff tries to inject new facts into this case through his response brief. However, "[i]t is well-established that parties cannot amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broaldands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Therefore, Plaintiff's claims for supervisory liability must be dismissed.

Though the Complaint lacks the necessary facts and allegations to support its claims against Defendants, the Court finds that granting leave to amend would create no "prejudice" to Defendants and would not necessarily be "futile." *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012.) Additionally, there is no evidence of "bad faith on the part of" Plaintiff. *Id.* Considering these factors, the Court follows the general rule and permits Plaintiff the opportunity to amend his initial pleading. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999.)

### IV.  CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss. (ECF No. 10.) The complaint as against Defendants Hutson, Caudill, and Marshall is hereby **DISMISSED**, without prejudice.[1] Plaintiff is **GRANTED** leave to amend his complaint within ten days of the entry of this order.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     July 2, 2024

THOMAS E. JOHNSTON, CHIEF JUDGE

---

[1] Also pending before the Court is Defendants' Motion for Leave to Submit Supplemental Authority. (ECF No. 29.) Since Defendants' Motion to Dismiss is **GRANTED**, their Motion for Leave to Submit Supplemental Authority is **DENIED AS MOOT**.