IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CALVIN MCCLENDON,

          Plaintiff,

v.                                           CIVIL ACTION NO.  2:23-cv-00709

LIEUTENANT TIMOTHY TIBBS, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Steve Caudill and Jason Hutson's ("Defendants") Motion to Dismiss Amended Complaint[1]. (ECF No. 51.) For the reasons set forth below, Defendants' motion is **DENIED**.

*I.    Background*

As alleged in the Amended Complaint, on July 26, 2023, Calvin McClendon ("Plaintiff") and Denzel Travis, pretrial detainees at the North Central Regional Jail ("NCRJ") were being escorted by officers prior to scheduled court appearances. (ECF No. 44 at 3-4.) At that time, Plaintiff and Travis had their legs shackled and hands cuffed at their sides. (*Id.* at 4.) While moving toward the exit, Timothy Tibbs, a NCRJ correctional officer, came up behind Plaintiff, grabbed his head, and slammed Plaintiff's and Travis' heads together. (*Id.*) Tibbs then slammed Plaintiff and Travis up against the wall and began kicking their legs back towards Tibbs and away from the wall. (*Id.*) Tibbs issued no order to Plaintiff or Travis prior to using force against them.

---

[1] The parties stipulated to the dismissal of Defendant William Marshall. (ECF No. 56.)

(*Id.*)  While being forced against the wall, Travis informed Tibbs that they were on video.  (*Id.*) Tibbs responded to the effect that when Plaintiff and Travis return to NCRJ, Tibbs "would give them something to sue him about."  (*Id.* at 5.)

Upon returning to NCRJ, Plaintiff and Travis requested that other officers take them directly to the medical unit so they would not be assaulted by Tibbs again.  (*Id.*)  The other officers ignored the request.  (*Id.*)  When Tibbs saw Plaintiff and Travis, he "began clapping and said that he had been waiting for them all day."  (*Id.*)  Tibbs placed Plaintiff and Travis into temporary holding cages ("THC") beside each other.  (*Id.*)  While Plaintiff and Travis were locked securely in their THCs and presented no threat, Tibbs approached the THCs and deployed oleoresin capsicum spray ("OC spray") into the faces of Plaintiff and Travis.  (*Id.* at 5-6.)  Tibbs did not issue Plaintiff or Travis an order or warning prior to deploying the OC spray.  (*Id.* at 6.) Following this, Tibbs said something to the effect of "I told you I had something for you when you came back from court, I've been waiting for you all day."  (*Id.*)  Following this, Plaintiff was taken to the shower in the segregation unit and placed in a segregation unit cell where he was not given access to a sleeping mat or grievance forms.  (*Id.* at 6-7.)

Plaintiff filed his Complaint on November 2, 2023.  (ECF No. 1.)  The Court granted Defendants' Motion to Dismiss for failure to state a claim on July 2, 2024.  (ECF Nos. 10, 42.) Plaintiff filed his Amended Complaint on July 11, 2024, alleging four counts.  (ECF No. 44.) Counts I and II are asserted against all defendants, while Counts III and IV are asserted against Tibbs only.  (*Id.*)  Counts I and II assert violations of Plaintiff's Fourteenth Amendment rights based upon excessive use of force.  (*Id.* at ¶¶ 93-114.)  The claims that relate to Defendants Hutson and Caudill are based on the theory of supervisor liability.  (*Id.*)  Defendants filed their

2

Motion to Dismiss Amended Complaint on September 13, 2024. (ECF No. 51.) Plaintiff filed his response in opposition on September 27, 2024, (ECF No. 53), and Defendants filed their reply on October 4, 2024. (ECF No. 54.) Therefore, this motion is fully briefed and ripe for adjudication.

## II. Legal Standard

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. However, "a complaint

is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017).

### III.  Discussion

In Count I, Plaintiff alleges through 42 U.S.C. § 1983 that Defendants violated his Fourteenth Amendment right to be free from punishment without due process of law when Plaintiff was physically assaulted by Officer Tibbs.  (ECF No. 44 at ¶¶ 93-103.)  Plaintiff alleges that Defendants, while acting in a supervisory capacity, "explicitly and/or tacitly condoned the unconstitutional actions of Defendant Tibbs."  (*Id.* at ¶ 96.)  Plaintiff alleges that as a result of the physical assault, Plaintiff "suffered injuries including headaches and sharp pain in his head." (*Id.* at 84.)  Further, Plaintiff alleges that Defendants' actions were "committed under the color of state law, unreasonable, excessive and deprived [Plaintiff] of his clearly established constitutional right to be free from the use of excessive force that amounts to punishment under the Fourteenth Amendment."  (*Id.* at 99.)

In Count II, Plaintiff alleges through 42 U.S.C. § 1983 that Defendants violated his Fourteenth Amendment right to be free from punishment without due process of law when Plaintiff was sprayed with OC while he was locked securely in a THC.  (*Id.* at ¶¶ 104-14.)  Plaintiff alleges that because of the OC spray, Plaintiff "suffered injuries including the inability to breathe properly, and a burning sensation on his skin that lasted for several days.  The spray on his body and in his hair was further activated during his shower, causing the pain to increase.  The smell of the spray lingered for several days, causing continued irritation."  (*Id.* at ¶ 85.)  In alleging supervisory liability against Defendants in Count II, Plaintiff reiterates the same positions as to Defendants' culpability that were alleged in Count I.  (*See id.* at ¶¶ 104-14.)

### A. Supervisory Liability

At all relevant times herein, Plaintiff was a pretrial detainee. Thus, his claims are evaluated under the Fourteenth Amendment, rather than the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983). "The [Fourteenth Amendment] due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Pepper-spraying and slamming against a wall a pretrial detainee who is compliant and poses no physical threat violates the Eighth Amendment; therefore, it also violates the Fourteenth Amendment. *See Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021).

Plaintiff is asserting his Fourteenth Amendment claims under 42 U.S.C. § 1983, which "imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotation marks omitted). Plaintiff brings these claims under the theory of supervisory liability. (ECF No. 44 at ¶¶ 93-114.) Claims giving rise to supervisory liability occur when prison supervisors may know or have reason to believe that their subordinates are "act[ing] outside the law" and violating individuals' constitutional rights. *Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020) (quoting *Randall v. Prince George's County, Maryland*, 302 F.3d 188, 203 (4th Cir. 2002)). When that occurs, the supervisor must "take steps to prevent such activity," and if he does not, then he too "bears some culpability for [the] illegal conduct [and] may be held liable." *Id.* (internal quotation marks omitted). Plaintiffs "assume[] a heavy burden of proof in supervisor liability cases." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Plaintiffs seeking to impose supervisory liability must prove:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

    *1. Actual or Constructive Knowledge*

The first element of supervisory liability requires actual or constructive knowledge by the supervisor that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury. *Shaw*, 13 F.3d at 799. To establish the pervasive and unreasonable risk, there must be "evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

To the extent that Plaintiff alleges Defendants were aware of Tibbs using force at a high rate, such uses of force do not necessarily mean that they were excessive. Plaintiff must also plead that those uses of force were excessive and plead sufficient facts in support of that claim. Despite this, Plaintiff sufficiently pleads that Defendant Hutson had subjective knowledge of a pervasive and unreasonable risk of constitutional injury on both counts. For example, Plaintiff pleads that "[b]ecause Defendant Hutson reviewed all or nearly all uses of force in the facility, he would have been aware of the very high rates of use of force by Defendant Tibbs, including conspicuous instances of Defendant Tibbs's use of oleoresin capsicum spray against inmates who were secured in handcuffs, cells, or holding cages, in the absence of any legitimate nonpunitive governmental objective." (ECF No. 44 at ¶ 61.) Here, Plaintiff pleads that Defendant Hutson

6

would have known of Tibbs' prior use of OC spray without a legitimate nonpunitive governmental purpose because Hutson reviewed use of force reports containing those incidents. This pleading is not conclusory because it is based on supporting facts, such as Hutson's review of the use of force reports and the factual allegation that such use of force reports contained claims of spraying without a legitimate nonpunitive governmental purpose. Plaintiff also makes a sufficient pleading on this element as to physical force as well. For example, Plaintiff pleads that "Hutson reviewed inmate grievances, requests, and other communications accusing Defendant Tibbs . . . of using manual physical force against inmates without justification." (*Id.* at ¶ 66.) In this example, Plaintiff alleges that Hutson knew of the risk based on grievances, requests, and other communications, and alleges that these uses of force were "without justification", rather than just asserting them as a simple use of force.

Plaintiff also makes a sufficient pleading on this element for both counts as to Defendant Caudill. For example, Plaintiff alleges that "[b]ecause Defendant Caudill reviews all, or nearly all, uses of force at NCRJ, he would have been aware of the very high rates of use of force by Defendant Tibbs, including conspicuous instances of the use of OC spray or manual physical force in the absence of any legitimate nonpunitive governmental objective." (*Id.* at 70.) While high uses of force alone are insufficient, Plaintiff also pleads that these uses of force included OC spray and manual physical force without a legitimate nonpunitive governmental objective. Furthermore, Plaintiff sufficiently pleads Defendant Caudill's knowledge because he alleges it is based on his reviews of use of force reports, rather than alleging in a conclusory manner that he simply knows of the excessive force. Therefore, Plaintiff sufficiently pleads the first element as to both Defendants.

7

*2. Inadequate Response*

The second element of the supervisory liability analysis requires "that the supervisor's response to [the] knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices." *Shaw*, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotations omitted). As discussed in the previous element, Plaintiff sufficiently alleged documented widespread abuses, therefore, Plaintiff must sufficiently allege that Defendants failed to take action in the face of those abuses. First, Plaintiff alleges that Defendants were the responsible parties to act in this matter, as Defendant Caudill is the Director of Security Services at DCR and Defendant Hutson is the Superintendent at NCRJ. (ECF No. 44 at ¶¶ 5-6.) As plaintiff sufficiently alleges, Defendants are responsible for the supervision and oversight of uses of force and the safe staffing at NCRJ, and thus would be the individuals required to act in the face of widespread abuse. (*Id.*) Second, Plaintiff sufficiently alleges that Defendants failed to act in the face of the alleged abuse. For example, Plaintiff alleges that during his uses of force, Tibbs "displayed little to no concern that he would be terminated, reprimanded, or otherwise disciplined for his excessive, unnecessary, and unjustified uses of force against Plaintiff" and alleges that despite being told he was on camera, Tibbs engaged in the excessive force anyway. (*Id.* at ¶¶ 55-56.) Plaintiff also alleges that despite their actual knowledge, Defendants "took no steps to curb Defendant Tibbs's unconstitutional actions against inmates at NCRJ." (*Id.* at ¶¶ 67, 71.) Therefore, Plaintiff sufficiently alleges the second element as to Defendants on both counts.

### 3. Causal Link

The final factor requires an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw*, 13 F.3d at 799. "[T]he causal link in § 1983 cases is analogous to proximate cause. In other words, [defendants are] liable for the natural consequences of [their] actions." *Shaw*, 13 F.3d at 800 (internal quotations omitted). Plaintiff alleges that Tibbs used excessive force in the view of a camera despite knowing that Defendants would review the footage and further alleges that Tibbs expressed no concerns over being disciplined and even taunted Plaintiff to sue him. (*Id.* at ¶ 56.) Plaintiff further alleges that Defendants' inactions led to the injuries suffered by Plaintiff for which he is seeking damages. (*Id.* at ¶¶ 100, 111.) Viewing the factual allegations in the Amended Complaint as true, the Court could make a reasonable inference that "defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, Plaintiff sufficiently pleads causation by linking Tibbs' assault and subsequent lack of consequences to Defendants' inactions. Therefore, Plaintiff sufficiently pleads each factor as to supervisory liability on both counts.

### B. Qualified Immunity

Finally, Defendants raise qualified immunity as a defense. Qualified immunity shields government officials performing discretionary functions from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test for qualified immunity is "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223 (2009). "Protections for

pretrial detainees under the Fourteenth Amendment are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Short v. Hartman*, 87 F.4th 593, 607 (4th Cir. 2023) (citing *City of Revere v. Mass. Gen. Hospital*, 463 U.S. 239, 244 (1983)). By July 2023, it was clearly established that the use of excessive force against restrained or subdued detainees, including through OC spray, is a constitutional violation. *See Dean v. Jones*, 984 F.3d 295, 304-05 (4th Cir. 2021). Further, by July 2023, it was clearly established that supervisors may be held liable for the constitutional injuries inflicted by their subordinates. *Slakan*, 737 F.2d at 372 (citing *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)). Therefore, Defendants Hutson and Wood are not entitled to qualified immunity at this stage of the proceedings.

## IV. Conclusion

For the above-mentioned reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint, (ECF No. 51), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 3, 2025

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE