IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CALVIN MCCLENDON,

          Plaintiff,

v.                                    CIVIL ACTION NO. 2:23-cv-00709

LIEUTENANT TIMOTHY TIBBS, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are Jason Hutson and Steve Caudill's ("Defendants") Motions for Summary Judgment[1]. (ECF Nos. 109; 111.) For the reasons set forth below, Defendants' motions are **DENIED**.

## I.    BACKGROUND

This case arises out of injuries suffered by Calvin McClendon ("Plaintiff") while he was a pretrial detainee at North Central Regional Jail ("NCRJ"). (ECF No. 44.) On July 26, 2023, while Plaintiff and Denzel Travis ("Travis"), were being escorted through the NCRJ receiving area to appear in court, they were involved in an incident with Defendant Timothy Tibbs ("Tibbs"). (ECF No. 114-1 at 11:12-14.) According to Plaintiff, Tibbs "smashed our heads together, pushed us against the wall and was making us lean on the wall and kicking our feet back so we could fall." (*Id.* at 11:15-18.) Plaintiff claims that he and Travis were walking to the exit door and states that they were cuffed and shackled. (*Id.* at 141:1-9.) Tibbs disputes using force but

---

[1] Also before the Court are Defendants' withdrawn motions, (ECF Nos. 100; 102), which are **DENIED AS MOOT**, and Plaintiff's Motions to File Response Under Seal, (ECF Nos. 113; 115), which are **GRANTED**.

admits that he "g[o]t them on the wall" and "g[o]t their legs back. (ECF No. 114-2 at 21:6-9.) Plaintiff told Tibbs that he would sue him, and Tibbs responded to the effect of "you can come after court, I'll be right here waiting." (ECF No. 114-1 at 33:7-8.) Officers Trickett and Vincent also heard Tibbs tell Plaintiff that he would wait for them to return. (ECF Nos. 114-5 at 0:04:30-:0:04:49; 114-6 at 0:03:32-0:06:05.) Upon return to NCRJ, Plaintiff and Travis were placed in temporary holding cells ("THCs"). (ECF No. 114-1 at 33:14-23.) While secured in the THCs, Tibbs approached Plaintiff and Travis and deployed pepper spray on them. (ECF No. 114-4 at 6.) Plaintiff was sprayed twice, and Travis was sprayed five times. (*Id.* at 6-9.) Witnesses describe Plaintiff and Travis as "sitting there talking" and not causing problems. (ECF No. 114-7 at 17:9-12.) A subsequent CID investigation found that Tibbs' sixth and seventh sprays were unjustified. (ECF No. 114-4 at 8-9.)

Plaintiff's Amended Complaint brings two counts solely against Defendant Tibbs, and two counts against all Defendants for violations of Plaintiff's Fourteenth Amendment rights based upon excessive uses of force (Counts I and II). (ECF No. 44.) Defendants Hutson and Caudill filed Motions for Summary Judgment (ECF Nos. 109, 111), Plaintiff responded via redacted and sealed memoranda, (ECF Nos. 113-116), and Defendants timely replied, (ECF Nos. 119-20.) Therefore, Defendants' motions are fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

A grant of summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For the nonmovant to survive a summary judgment motion, they must counter with a "show[ing] that there is a genuine dispute of material fact." Simmons v. Whitaker,

2

106 F.4th 379, 384–85 (4th Cir. 2024).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  News and Observer Publ. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).  Either party may prove or disprove a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  In determining the existence of a genuine dispute of material fact, the Court must "view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party."  Bhattacharya v. Murray, 93 F.4th 675, 686 (4th Cir. 2024).

### III.   DISCUSSION

In support of their motions for summary judgment, Defendants Hutson and Caudill present two arguments: (1) they are entitled to summary judgment because there is no triable issue supporting a claim for supervisory liability; and (2) they are entitled to qualified immunity.  (ECF Nos. 110 at 9, 14; 112 at 8, 14.)

### A. *Supervisory Liability*

Counts I and II assert claims for violations of the Fourteenth Amendment based on excessive force for physical assault and the use of O.C. spray.  (ECF No. 44.)  As the claims relate to Defendants Hutson and Caudill, they are based on supervisory liability.  (*Id.*)  Defendants argue that Plaintiff's allegations surrounding the "numerous uses of excessive force" by Tibbs are "not enough to make out a claim for the harm alleged."  (ECF Nos. 110 at 9; 112 at

3

9.) Defendants argue that they were "personally aware of uses of force by Defendant Tibbs prior to July 26, 2023," but state there is no evidence that they were "personally aware of alleged unconstitutional conduct by Tibbs that posed a pervasive and unreasonable risk of injury to inmates such as the Plaintiff." (ECF Nos. 110 at 12; 112 at 11.) Defendants assert that at no time did they determine Tibbs had engaged in force that was not rationally related to a legitimate nonpunitive governmental purpose or that was excessive in relation to that purpose. (*Id.*) Defendants argue that Plaintiff "has pointed to no evidence, and has identified no witness, to establish that any prior use of force by Tibbs was without justification or that it was done in the absence of any legitimate nonpunitive governmental objective." (ECF Nos. 110 at 13; 112 at 12.) Defendants also argue that "Plaintiff certainly cannot establish that any such alleged conduct was pervasive and widespread." (*Id.*) Finally, Defendants assert that "[w]ithout any support for the first element of supervisory liability, the second two elements are also lacking," and similarly, "there is no genuine issue of fact supporting an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by Plaintiff." (ECF Nos. 110 at 14; 112 at 13.)

In response, Plaintiff argues there are genuine issues of material fact as to whether Defendants are liable in a personal individual capacity. (ECF Nos. 114 at 10; 116 at 10.) Plaintiff argues that the ratification of unconstitutional uses of force can form a basis for personal § 1983 liability, and there is a genuine issue of material fact because evidence shows Defendants ratified Tibbs' conduct. (ECF Nos. 114 at 10-11; 116 at 11.) Plaintiff notes that Defendants admit they were personally aware of prior uses of force by Tibbs and ratified "all of the roughly 200 uses of force by Defendant Tibbs . . . more than 30 of which included the use of pepper spray

4

against [an] inmate in a cell or THC where there was no imminent harm presented and where no handheld video camera was used, in violation of WVDCR policy." (*Id.*)

Plaintiff argues that Defendants never found the sprays to be improper because Tibbs' use of force was "consistent with and supported by informal policy and custom at NCRJ." (*Id.*) Plaintiff points to uses of force by Tibbs against inmates in THCs or cells and notes that Defendants determined those uses of force were justified or did not request further information about those uses of force. (ECF Nos. 114 at 12; 116 at 12.) Plaintiff notes that in the 15 months prior to the current incident, Tibbs "regularly engaged" in the type of conduct that he demonstrated against Plaintiff. (ECF Nos. 114 at 12; 116 at 13.) Plaintiff also points to Captain Toppings' testimony that spraying celled inmates was a regular practice at NCRJ. (*Id.*) Plaintiff argues that Hutson failed to correct Tibbs' practice of improper uses of force, and argues that Caudill did not carry out his duty of inspecting use of force reports or did not report uses of force to CID. (ECF Nos. 114 at 14; 116 at 14.) Further, Plaintiff argues that Hutson "worked to actively conceal this conduct from scrutiny" by requesting officers to change use of force reports. (ECF Nos. 114 at 14.) Plaintiff also points to Tibbs' testimony that says some incidents were changed so they would not be flagged for review. (*Id.* at 15.)

Next, Plaintiff argues that there are also genuine issues of material fact as to whether Defendants are liable in a supervisory capacity. (ECF Nos. 114 at 16; 116 at 15.) Defendant argues that supervisors may be liable for constitutional harms caused by their subordinates if they fail to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place. (*Id.*) Plaintiff argues that Defendants "approved of, and ratified all of the roughly 200 uses of force by Defendant Tibbs [they] reviewed, at least 30 of which included

5

the use of pepper spray against [an] inmate in a cell or a THC where there was no imminent harm presented and where no handheld video camera was used, in clear violation of WVDCR policy," and ratified uses of force similar to the one used against Plaintiff. (ECF Nos. 114 at 17; 116 at 16.) Plaintiff notes that Defendants state they previously did not find Tibbs' conduct to be excessive or improper but argues that they cannot escape liability by "merely issuing a stamp of approval for a supervisee's conduct." (ECF Nos. 114 at 18; 116 at 17.) Finally, Plaintiffs argue that there is a genuine issue of fact as to whether Defendants' authorization of Tibbs' conduct is affirmatively linked to Plaintiff's injuries, particularly because there is a long-time informal policy and custom approving improper use of force. (ECF Nos. 114 at 20; 116 at 19.)

Plaintiffs have produced sufficient evidence to establish that there is a genuine dispute of material fact and Defendants' are not entitled to judgment as a matter of law. While Defendants are correct that Plaintiff cannot simply point to a high number of uses of force and extrapolate that to establish Defendants' subjective knowledge, Plaintiffs produced more than that. Simply put, Defendants cannot rubber stamp the activities of their subordinates, then use that rubber stamp to claim they had no knowledge of their subordinates' unconstitutional activities. In doing so, Defendants ratify and authorize their subordinates' conduct, and a supervisor may be directly liable if the "supervisor participated in the wrongful conduct . . . [by] either tacitly authorizing the conduct or through the supervisor's own affirmative misconduct." *Collins v. Davis*, 2024 U.S. Dist. LEXIS 224203, *6-7 (W.D. Va., Dec. 11, 2024) (citing *Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 464 (M.D.N.C., June 6, 2016). The evidence shows that despite reviewing use of force reports regarding Tibbs engaging in spraying incidents like in this case, Defendants took no action to correct Tibbs' conduct. Furthermore, the evidence shows that Defendant Hutson

6

may have engaged in efforts to actively conceal Tibbs' conduct. Therefore, a genuine dispute of material fact exists as to each count and Defendants are not entitled to judgment as a matter of law.

### B. *Qualified Immunity*

In addition to the arguments discussed above, Defendants argue that they are entitled to qualified immunity because their actions "constitute protected discretionary decisions." (ECF Nos. 110 at 14; 112 at 14; 119 at 3; 120 at 4.) Defendants note that qualified immunity shields government officials performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (ECF Nos. 110 at 14-15; 112 at 14.) Defendants state that Plaintiff has alleged knowledge on the part of Defendants as to prior unconstitutional uses of force by Tibbs but argues that Defendants "did not recall any prior use of force which created any concern." (*Id.*) Defendants argue that Plaintiff has not created a genuine issue of fact that Defendants violated his Fourteenth Amendment rights, and thus he cannot meet the first prong of the qualified immunity test. (ECF Nos. 110 at 16; 112 at 15.) Defendants also argue that the second prong is not met because "in light of the preexisting law, it is not apparent that [their] actions under the circumstances presented were unlawful." (*Id.*)

Plaintiff argues that Defendants are not entitled to qualified immunity because first, "the operative law in this matter was clearly established well before July 2023," and second, "based on the evidence of the record, [Defendants were] either blindingly incompetent in [their roles] or [they] were] affirmatively, knowingly assisting Defendant Tibbs in violating the law." (ECF Nos. 114 at 8; 116 at 8.) Plaintiff argues that by July 2023, it was clearly established that the use of physical force against a restrained individual offering no significant resistance or otherwise acting in a

7

threatening manner was a use of excessive force amounting to punishment, including force through the unwarranted use of pepper spray. (ECF Nos. 114 at 9; 116 at 9.) Plaintiffs also assert that by July 2023, it was clearly established that supervisors may be directly liable if the supervisors participated or authorized the conduct, or may be liable for the constitutional injuries inflicted by their subordinates. (*Id.*)

To overcome qualified immunity, "a plaintiff must typically show (1) that the government official violated a statutory or constitutional right and (2) that right was clearly established at the time of the challenged conduct." *King v. Riley*, 76 F.4th 259, 265 (4th Cir. 2023). Qualified immunity does not protect officials who knowingly disregard the law. *Id.* Starting with the second prong as a threshold matter — Plaintiff is correct that by July 2023, it was clearly established that pretrial detainees are entitled to be free from excessive punishment, including through the use of excessive physical force or pepper spray, and notably when those detainees are restrained and not presenting resistance or acting in a threatening manner. *Dean v. Jones*, 984 F.3d 295, 304 (4th Cir. 2021); *United States v. Cowden*, 882 F.3d 464, 474 (4th Cir. 2018); " *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008). Furthermore, it was also clearly established by July 2023 that supervisors may be liable, directly or in a supervisory capacity, in § 1983 claims. For example, a supervisor may be directly liable if he "participated in the wrongful conduct . . . [by] either tacitly authorizing the conduct or through the supervisor's own affirmative misconduct." *Collins*, 2024 U.S. Dist. LEXIS 224203, *6-7; *Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."). Supervisors may also be held liable for the constitutional injuries of their subordinates. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

8

Therefore, Plaintiff satisfies the requirements of the second prong. The first prong, whether the government official violated a statutory or constitutional right, rises and falls with the substantive claim. As discussed, there is sufficient evidence that that Defendants ratified and authorized Tibbs' conduct. Likewise, there is sufficient evidence that, despite reviewing use of force reports regarding Tibbs engaging in improper spraying incidents like in this case, Defendants took no action to correct Tibbs' conduct. Furthermore, the evidence shows that Defendant Hutson may have engaged in efforts to actively conceal Tibbs' conduct. Therefore, Plaintiff also satisfies the first prong of the test.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motions for summary judgment are **DENIED**. (ECF Nos. 109; 111.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    October 14, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE